**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MELVIN SANTANA MOTA-RAMOS,<br><br>Petitioner,<br><br>v.<br><br>JOSEPH D. MCDONALD, Plymouth County Sheriff, TODD M. LYONS, Acting Director Immigration and Customs Enforcement, Boston Field Office, PATRICIA HYDE, Director of the Boston Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, KRISTI NOEM, U.S. Secretary of Homeland Security, PAMELA BONDI, Attorney General of the U.S., ANTONE MONIZ, Superintendent Plymouth County Sheriff's Office, MA,<br><br>Respondents. | Civil Action No. 25-13363-MJJ |

## MEMORANDUM OF DECISION AND ORDER

December 12, 2025

JOUN, D.J.

Melvin Santana Mota Ramos ("Mr. Mota-Ramos" or "Petitioner") petitions the Court under 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment for relief from detention at the Plymouth County Correctional Facility.

## I.    FACTUAL BACKGROUND

Mr. Mota-Ramos is a citizen of Guatemala. [Doc. No. 1 at ¶¶ 1, 13; Doc. No. 11-1 at ¶ 6]. On or about June 8, 2015, Mr. Mota-Ramos entered the United States without admission or parole and was subsequently detained and then removed from the United States. [Doc. No. 1 at ¶

14; Doc. No. 11-1 at ¶¶ 7–9; Doc. No. 11-2 at 1]. On April 30, 2016, Mr. Mota-Ramos reentered the United States and was again detained. [Doc. No. 1 at ¶ 15; Doc. No. 11-1 at ¶ 10]. This time however, he was released on an Order of Supervision ("OSUP") and placed in the Alternatives to Detention Program ("ATD"). [Doc. No. 1 at ¶ 16; Doc. No. 11-1 at ¶ 11]. Mr. Mota-Ramos also expressed a fear of returning to Guatemala and requested a reasonable fear interview to determine his eligibility for cancelation of removal and protection under the Convention Against Torture; this request been pending since 2016. [Doc. No. 1 at ¶¶ 17–18].

Almost ten years later, on August 26, 2025, the Rhode Island State Police arrested Mr. Mota-Ramos for a traffic violation. [Doc. No. 11-1 at ¶ 12]. He failed to pay a fine, and on October 7, 2025, Mr. Mota-Ramos's license was suspended. [*Id*. at ¶ 13]. On November 1, 2025, Immigration and Customs Enforcement ("ICE") encountered Mr. Mota-Ramos and took him into custody based on a determination that Mr. Mota-Ramos had a final order of removal and warrant of removal. [*Id*. at ¶ 14]. "On or about the same day, ICE ERO [Enforcement and Removal Operations] issued a Notice of Revocation of Release, revoking Petitioner's Order of Supervision because ICE has determined that the purposes of release have been served, and it is appropriate to enforce the removal order." [Doc. No. 11-1 at ¶ 14; Doc. No. 11-4 at 1]. The Notice of Revocation was digitally signed by Field Office Director, David T. Wesling on November 1, 2025, at 1:30 PM. [Doc. No. 11-4 at 1]. ICE conducted an initial informal interview on the same day. [Doc. No. 11-1 at ¶ 14; Doc. No. 11-4 at 3].

According to Respondents, Mr. Mota-Ramos made no written or oral statement in response; however, he somehow claimed a fear of return to Guatemala. [Doc. No. 11-1 at ¶¶ 14–15]. On November 5, 2025, Mr. Mota-Ramos was served with a reasonable fear orientation packet at Plymouth. [*Id*. at ¶ 16]. On November 21, 2025, ICE ERO referred Mr. Mota Ramos to

U.S. Citizenship and Immigration Services for a reasonable fear interview. [*Id.* at ¶ 17–18]. Counsel for Mr. Mota-Ramos was informed that USCIS had already conducted a reasonable fear interview on November 25, 2025. [Doc. No. 13 at ¶¶ 5–9; Doc. No. 17]. At a status conference on December 4, 2025, counsel for Mr. Mota Ramos stated that, he learned after the fact that, during the reasonable fear interview, Mr. Mota-Ramos indicated that he had decided to withdraw his request for a reasonable fear interview. [*Id.*]. Counsel for Mr. Mota-Ramos has since attempted to rescind Mr. Mota-Ramos's withdrawal, the results of which remain pending. [*Id.*]. In the meantime, Mr. Mota-Ramos remains detained at Plymouth. [Doc. No. 11-1 at ¶ 19].

## II.    DISCUSSION

### A.    *Zadvydas* Is Not Applicable

As a preliminary matter, Respondents argue that, because Mr. Mota Ramos has been detained for less than six months, his detention pending execution of his removal order is presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents' argument misses the mark. This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* Mr. Mota-Ramos after he was issued a final order of removal, detained, and subsequently released on an OSUP. DHS regulation 8 C.F.R. § 241.4 applies to non-citizens in Petitioner's situation.

### B.    Lawfulness Of Detention

The Department of Homeland Security may revoke the release of a petitioner like Mr. Mota-Ramos if 1) "[t]he purposes of release have been served," 2) "[t]he alien violate[d] any condition of release," 3) "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or 4) "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). Section 241.4(l)(1)

requires Mr. Mota-Ramos "be notified of the reasons for revocation." On November 1, 2025, ICE ERO issued a Notice of Revocation, which stated his order of supervision was revoked "based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case." [Doc. No. 11-4 at 1]. The Notice of Revocation then stated that on June 9, 2015, Mr. Mota-Ramos was ordered removed and that he is subject to an administrative final order of removal, and that "the purposes for your release have been served and it is appropriate to enforce the removal order." [*Id.*].

Mr. Mota-Ramos argues that Respondents violated its own regulations and his due process rights because he was not given meaningful notice of his revocation and a meaningful opportunity to be heard during his informal interview.[1] Respondents argue that ICE has broad, discretionary authority to revoke an Order of Supervision in this context under § 241.4, and it has fully complied with its regulatory requirements. In relevant part, Section 241.4(l)(1) states,

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

Assistant Field Office Director Keith Chan asserted in his declaration that, "ICE promptly conducted an initial informal interview on the same day [November 1, 2025] to allow Petitioner an opportunity to respond to the reasons for the revocation of the order of supervision." [Doc. No. 11-1 at ¶ 14]. The Informal Interview sheet identified the detention

---

[1] Mr. Mota Ramos also asserts that he was not given a meaningful opportunity to be heard during his reasonable fear interview. According to counsel for Mr. Mota Ramos, he had requested a reasonable fear interview on June 8, 2016. [Doc. No. 13 at ¶ 3]. On November 25, 2025, almost ten years later, counsel was informed that USCIS had conducted a reasonable fear interview, but according to counsel for Mr. Mota Ramos, he did not receive any notice from Respondents or an opportunity to meet with Mr. Mota Ramos prior to said interview. [Id. at ¶¶ 5–9]. As this claim is tied to his removal proceedings, Mr. Mota Ramos must first administratively exhaust the claim before an immigration court before I may review it. *See Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 13 (1st Cir. 2007).

location as "Pro-Warwick," and the interviewing officer as "O. Ibanet," but much information is missing. [Doc. No. 11-4 at 3]. Did the interviewer have the authority to give the interview? How much time was Mr. Mota-Ramos given to review the Notice of Revocation before he was interviewed? Was Mr. Mota-Ramos afforded an opportunity to consult an attorney? Was there a translator or an interpreter to assist him? Answers to these basic questions are necessary to determine whether Mr. Mota-Ramos had a meaningful opportunity to respond to the reasons for the revocation of the Order of Supervision. Furthermore, the Chan declaration indicates that even though Mr. Mota-Ramos made no written or oral statement in his informal interview, he somehow indicated a fear of return to Guatemala. This contradiction raises further questions about the nature of the informal interview Mr. Mota-Ramos received.

More troubling is Respondent's representation that Mr. Mota-Ramos withdrew his request for a reasonable fear interview, particularly given the circumstances of this case. As noted, despite having retained immigration counsel, there is nothing in the record to suggest that he had access to counsel.[2] Given that Mr. Matos-Ramos expressed fear of returning to Guatemala when he was detained on November 1, 2025, and Respondents provided him with a reasonable fear orientation packet on November 5, 2025, serious questions remain as to whether Mr. Matos-Ramos understood what was happening and whether he intended to waive his right to a reasonable fear interview. Putting these issues aside, it is clear that he has since requested that his request to withdraw the reasonable fear interview be rescinded after finally being able to consult with his counsel.

---

[2] Apparently, according to Respondents, a single attempt was made to contact Petitioner's immigration counsel by telephone. Counsel for Petitioner represented at the December 4, 2025 conference that there is no evidence of such attempt; no message was left for counsel if such a call was made. Even if the call was made, clearly this was insufficient.

Regardless, the fact is that the Respondents have long known that Mr. Mota-Ramos had a final order of removal and that he was under supervision since 2016 while awaiting a reasonable fear interview. Respondents have not identified any evidence supporting their decision to re-detain Mr. Mota Ramos; there are no "changed circumstances" such that the "purpose of release had been served." On the record before me, Respondents have not shown that Mr. Mota Ramos was provided meaningful notice of the basis for revocation as required under their own regulations. *See Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (cleaned up) ("[I]t is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). What little facts that have been established suggest that Mr. Mota-Ramos was not given such notice and opportunity. "[B]ecause ICE did not follow its own regulations in deciding to re-detain [Mr. Mota-Ramos], his due process rights were violated, and he is entitled to release. And even if that were not so, he still would be released because [Respondents have not shown] he was [] afforded even the minimal due process that protects everyone—citizens and noncitizens—in the United States." *Ceesay*, 781 F. Supp. 3d at 166.[3]

## III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas is <u>GRANTED</u>. Until such time when a decision is made on Mr. Matos-Ramos's request to rescind his withdrawal of a reasonable fear interview, and if granted, until such time when a reasonable fear interview is held, the Court <u>ORDERS</u> Mr. Mota-Ramos be released to the same conditions as imposed by DHS on May 2, 2016.

---

[3] Because I find that Mr. Mota Ramos was not provided meaningful notice of the basis for revocation and that Respondents have not followed their own regulations, I need not address the issue of whether the official who revoked Mr. Mota Ramos' release had the authority to do so under ICE regulations.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge